**BALTIC INVESTMENT COMPANY,**
**Appellant,**

v.

**William Robert PERKINS, Jr., et al.**

**No. 71–1601.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 11, 1972.

Decided Feb. 21, 1973.

Norment Custis, Washington, D. C., with whom Edwin Shelton and Marshall P. Johnson, Washington, D. C., were on the brief, for appellants.

Albert Ginsberg, Silver Springs, Md., with whom Joseph H. Schneider and Herbert D. Horowitz, Silver Springs, Md., were on the brief, for appellees.

Before SIMON E. SOBELOFF,* Senior Circuit Judge for the Fourth Circuit, and TAMM and LEVENTHAL, Circuit Judges.

TAMM, Circuit Judge:

Appellant brought this action in the district court to clear a purported easement from title to land owned by it in the vicinity of 15th Street and Rhode Island Avenue, N.W. The land in question consists of lots 118 and 119, both owned by appellant, and lot 120, owned by appellee Perkins, in square 210 of the District of Columbia. These lots, along with a fourth not involved in the present controversy (lot 811), all enjoy brief frontage on Rhode Island Avenue between 15th Street on the west and an alley on the east. Lot 118 is the western corner lot, abutting 15th Street on the west as well as Rhode Island Avenue on the south, with lot 119 adjacent to it on the east. Lot 120 is contiguous to the eastern border of lot 119, and lot 811 is contiguous to lot 120 on the east. The purported easement, five feet in width, runs across the northern portion of lots 118 and 119 to the benefit of the dominant estate, lot 120, thereby permitting access from 15th Street to the rear of the premises located on that lot. .

Appellee answered the complaint by claiming, in the alternative, that he had a deeded right of way across the specified portions of lots 118 and 119 or that he had acquired a prescriptive easement for such use. Appellee thereafter moved for summary judgment, relying upon certified copies of title records filed with the recorder of deeds for the District of Columbia, a statement of material facts as to which there was no genuine issue, and sworn affidavits of appellee—who has owned the property since 1947—and Blanche Richardson—who has continuously been employed on the premises since 1924. Appellant, after receiving additional time to respond, filed an opposition to appellee's motion which consisted primarily of points and authorities in support of its opposition but which was unaccompanied by any documents, depositions, answers to interroga-

* Sitting by designation pursuant to Title 28, U.S.C. § 294(d).

tories or affidavits. The trial judge granted appellee's motion.[1]

■■ Since the reason for granting summary judgment is not apparent, we must examine both claims asserted by appellee. He first claims a deeded easement for right of way across lots 118 and 119. A brief examination of the title records before us illustrates that this contention cannot stand. The land was once owned by Webster Edgerly, who subdivided the plot into the three lots in question in 1906. Lot 119 was conveyed in 1907 by duly recorded deed, with an easement for right of way reserved in the grantor and his heirs and assigns.[2] In 1908, again by duly recorded deed, lot 120 was conveyed by Edgerly. While the lot was conveyed together with all "easements, privileges and appurtenances to the same belonging," nothing in the deed indicated that an easement for right of way over lot 118 was transferred, nor was any supplementary evidence presented to that effect. Thus, when Edgerly ultimately transferred lot 118 in 1920, although words designed to reserve an easement for the benefit of "other lots in said subdivision" appeared in the deed, the easement failed. A grantor cannot, by one and the same conveyance, grant a fee simple estate in a lot to one party while reserving an easement in a stranger to the transaction. *See* Dawson v. Western Maryland R. Co., 107 Md. 70, 68 A. 301 (1907); Herbert v. Pue, 72 Md. 307, 20 A. 182 (1890);[3] 2 American Law of Real Property § 8.29 (A. J. Casner ed. 1952);

and 2 G. Thompson, Commentaries on the Modern Law of Real Property § 334 (4th ed. 1961). Furthermore, no evidence was presented which would indicate that the easement had been transferred to appellee's predecessors in title prior to the sale of lot 120 and therefore that the words of limitation in the deed to lot 118 acted as an exception.

Thus, the trial judge necessarily found that appellee had acquired title prescriptively through open, notorious, continuous and adverse use for the statutory period.[4] Kogod v. Cogito, 91 U.S. App.D.C. 284, 200 F.2d 743 (1952). The touchstone of his decision is provided in Fed.R.Civ.P. 56(e):

> [A]n adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. (Emphasis added.)

Thus, on the basis of the information filed by the parties and the inferences which may fairly be drawn therefrom, we must determine whether the trial judge was justified in concluding that there was no *genuine* issue as to any material fact, as opposed to mere formal issues which are unsupported in the record. *See* Dewey v. Clark, 86 U.S. App.D.C. 137, 180 F.2d 766, 772 (1950).

It has been noted that the record deeds for Edgerly's conveyance of both

---

1. Apparently in opposition to appellee's statement of material facts as to which there is no genuine issue, which primarily sought admissions drawn from an abstract of title filed by appellee, appellant filed a motion to strike. This motion was properly denied by the trial judge as unresponsive and without merit. *See* U.S. District Court Rules—D.C.Rule 9(h) (1970).

2. It is not entirely clear from the record whether the easement was intended to run in favor of lot 118, 120 or both, although the latter is the most logical interpretation.

3. With respect to the applicability of Maryland law and common law to the District of Columbia, *see* D.C.Code § 49–301 (1967).

4. It is unnecessary for us to resolve the apparent conflict under the facts of this case between D.C.Code § 12–301 (1967), which provides a 15 year statute of limitations, and D.C.Code § 16–3301 (1967), which provides a 20 year statutory period, because on the record appellant has not successfully refuted appellee's evidence of open, notorious and continuous use for a period in excess of 40 years.

lots 118 and 119 contained words attempting to reserve an easement in favor of other lots in the subdivision. Successive conveyances followed, culminating in appellant's acquisition of lot 118 in 1963 by way of deed containing reference to the easement, and lot 119 by way of deed in 1964, also containing reference to the easement. Appellee's father acquired lot 120 in 1919 from Edgerly's successors in interest and appellee inherited the lot in 1947. According to the uncontradicted affidavits of Blanche Richardson and appellee, he and his father first used lot 120 as their residence for approximately 20 years. In addition, during that time and continuously thereafter the property has been used as a medical office by the family. Since at least 1924 the purported easement has continuously been used for ingress and egress to the rear (north) of the premises by appellee, his father, their employees, tradesmen, deliverymen, trash collectors and others. The alley is paved for its entire length, and from at least 1924 until 1965 it was bordered on both sides by a wooden fence eight feet in height "with access doors to lots 118 and 119 and full use into Lot 120."[5] Since the destruction of the fence in 1965, painted lines have marked the dimensions of the alley.

■ Appellant has done nothing to refute the fact that appellee and his father occupied lot 120 and used the purported easement for access to that property openly, notoriously and continuously for more than 40 years. Rather, he contests the adversity of use, relying solely upon a letter ostensibly written by Webster Edgerly in 1919 to persons unknown which was discovered, unacknowledged, in the title records relating to lot 120. The letter was apparently written in response to concern expressed by a representative of appellee's father that no agreement had been entered for an easement for right of way over lot 118. In the letter Edgerly discussed his plans for disposing of the only lot in the subdivision which remained unsold (lot 118). The letter is not in the least supportive of appellant's argument that "by deduction the letter can only be interpreted to indicate that [appellee's father] . . . was using the right of way by permission. The permission thus granted has continued until today."[6] Quite the contrary, the concluding sentence strongly implies adverse use:

> You and [appellee's father] . . . must understand that he has no legal or equitable remedy in this claim, or desire for a right of way . . . .

Moreover, even if we were to accept appellant's argument, the license or permission to use the property was revoked when it was transferred by Edgerly in 1920.[7]

■■ While the burden of establishing a prescriptive easement is quite obviously on he who asserts the interest, where the claimant has made a prima facie showing of the essential elements it is incumbent upon the landowner to introduce contradictory evidence.[8] Indeed, many jurisdictions further hold that where an alleged easement has been used openly, notoriously and continuously for the statutory period, the burden is on the landowner to prove that the use was permissive. See, e. g., Clayton v. Jensen, 240 Md. 337, 214 A.2d 154 (1965).[9] Here we are faced with open, notorious and continuous use for a period far exceeding that required by statute. Appellee succeeded in prima facie

---

5. Affidavit of William Robert Perkins.

6. Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 5.

7. 2 G. Thompson, Commentaries on the Modern Law of Real Property § 345 (4th ed. 1961).

8. Id. § 350.

9. Accord, Waidlich v. Farmers Bank of Mercersburg, 149 F.Supp. 741 (M.D.Pa. 1957); Walter G. Brix, Inc. v. Brown, 145 Cal.App.2d 177, 302 P.2d 74 (1956); Stetson v. Youngquist, 76 Mont. 600, 248 P. 196 (1926); Hall v. Backus, 92 W.Va. 155, 114 S.E. 449 (1922); and Bridwell v. Beerman, 190 Ky. 227, 227 S.W. 165 (1921).

establishing the elements of a prescriptive easement, and the only material introduced by appellant to overcome this evidence not only failed to support appellant's claim, but actually served to enhance the contention of appellee. The trial judge was fully justified in granting appellee's motion for summary judgment.[10]

Affirmed.

10. Appellant's alternative claim that we use our equitable powers to relocate the easement is without merit for reasons recently set forth in Fields v. District of Columbia, 143 U.S.App.D.C. 325, 443 F.2d 740, 745 (1970):

    The troublesome part of such disposition, however, is that it would take away appellants' rights . . . without their agreement and contrary to their desires and substitute an easement they do not desire. Such decree crosses the boundaries of equitable relief and the relief amounts to the reordering of property rights between private parties.